**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

RECEIVED

2019 JUN -7 P 3:28

DEBRA P. HACKETT, CLK.
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA.

|   |   |
|---|---|
| **PATRICK DUNN** | ) |
| **Plaintiff** | ) |
|  | ) |
| **v.** | ) |
|  | ) |
| **WINTZELL'S-CAPITAL** | ) |
| **CITY I, LLC,** | ) |
| **Defendant.** | ) |

**CIVIL ACTION NO.**

2:19-cv-395

## COMPLAINT

### I.     INTRODUCTION

Plaintiff, Patrick Dunn (hereinafter, "Plaintiff" or "Mr. Dunn"), files this Title

III, Americans with Disabilities Act (hereinafter, "ADA") action against Defendant,

Wintzell's, Inc. (hereinafter, "Defendant" or "Wintzell's"), pursuant to 42 U.S.C.

§12181 *et seq*. In Count One of the Complaint, Plaintiff seeks to enjoin Defendant

to remove architectural barriers from the Wintzell's facility. In Count Two of the

Complaint, Plaintiff seeks to enjoin Defendant to maintain policies, practices, and

procedures necessary to maintain the Wintzell's facility free of architectural barriers

both now and once the architectural barriers are removed from the Wintzell's

facility. In Count Three of the Complaint, Plaintiff seeks to enjoin Defendant's use

of the Wintzell's facility to provide full and equal enjoyment of the Wintzell's

facility to individuals with disabilities. Count Two of the Complaint and Count

Three of the Complaint seek independent relief in addition to the removal of architectural barriers from the Wintzell's facility. In Count Four of the Complaint, Plaintiff seeks to enjoin Defendant's failure to design and construct the Wintzell's facility to ADA compliance.

## JURISDICTION, PARTIES, AND ARTICLE III STANDING

1. This action is for declaratory relief and injunctive relief, pursuant to 42 U.S.C. §12181 *et seq.*, Title III of the ADA and implementing regulations; therefore, this Court is vested with original jurisdiction under 28 U.S.C. §1331 and §1343.

2. Venue is proper in this Court, the United States District Court for the Middle District of Alabama, pursuant to Title 28, U.S.C. §1391 and the Local Rules of the United States District Court for the Middle District of Alabama.

3. Mr. Dunn was involved in an automobile accident which caused permanent damage to his C-7 vertebra in his spinal cord. As a result, Mr. Dunn became paralyzed, which has permanently confined him to a wheelchair. The extent of Mr. Dunn's physical impairments limits his ability to care for himself, perform manual tasks, walk, stand, lift, bend, and work, all of which are major life activities pursuant to 42 U.S.C. §12102(2)(A). Therefore, Mr. Dunn is disabled pursuant to the ADA, in that he suffers a

2

physical impairment substantially limiting one or more major life activities. 42 U.S.C. §12102; *see also*, 28 C.F.R. §36.104.

4. Defendant is a limited liability company that is both registered to conduct business and is conducting business within the State of Alabama sufficient to create both general and specific *in personam* jurisdiction. Upon information and belief, Defendant operates the Wintzell's facility located at 128 Interstate Drive, Greenville, Alabama 36037. Defendant's facility is a place of public accommodation pursuant to 42 U.S.C. §12181(7).

5. All events giving rise to this lawsuit occurred in the Middle District of Alabama and Defendant is a citizen thereof.

6. Mr. Dunn travels to Greenville, Alabama and surrounding areas when he passes north along I-65, which is the interstate located by Wintzell's, regularly to go to Montgomery to his lawyers' office, and to Birmingham, where one of his doctors is located. Mr. Dunn has been to Wintzell's at least two times because of the location of the restaurant to the interstate. Mr. Dunn enjoys this restaurant for the reasons promoted by the restaurant itself: fresh seafood, the old-fashioned way. Mr. Dunn intends to continue visiting Defendant's restaurant, because he enjoys the goods and services offered by Defendant's restaurant. Mr. Dunn will return not only for the goods and services at Defendant's restaurant, but also, to confirm

3

compliance with the ADA by Defendant. Mr. Dunn does not know exactly when he will return to Defendant's restaurant because he has not planned every trip for the rest of his life. Such specific planning is not necessary to invoke the ADA. *See, e.g., Parr v. L&L Drive Inn Restaurant*, 96 F. Supp.2d 1065, 1079 (D. Haw. 2000); *Segal v. Rickey's Restaurant and Lounge, Inc*., No. 11-61766-cn (S.D. Fla. 2012) ("Specification as to date and time of return to this public accommodation is impossible due to the nature of the event. Fast food patrons visit such restaurants at the spur of the moment."). Nevertheless, Mr. Dunn definitely intends to return to Defendant's restaurant.

7. Plaintiff has been denied full and equal enjoyment of Defendant's public accommodation on the basis of Plaintiff's disabilities because of the barriers described below in paragraph nineteen (19) and throughout the Complaint.

8. Plaintiff has Article III standing to pursue this action because of the following: (1) Plaintiff is disabled, pursuant to the statutory and regulatory definition, (2) Defendant's facility is a place of public accommodation pursuant to the statutory and regulatory definition, (3) Plaintiff has suffered a concrete and particularized injury by being denied access to the public accommodation, and by Defendant's denial of the use of the public

4

accommodation for Plaintiff's full and equal enjoyment, as described throughout the Complaint, and (4) because of these injuries, there exists a genuine threat of imminent future injury, as described in paragraph seventeen (17) below.

## II. PLAINTIFF'S CLAIMS

### ADA, Title III

9. Congress enacted Title III of the ADA, 42 U.S.C. §12181 *et seq.* on or about July 26, 1990. Commercial enterprises were provided one and a half years from enactment of the statute to implement the requirements. The effective date of Title III of the ADA was January 26, 1992. (42 U.S.C. §12181; 20 C.F.R. §36.508(A); *see also*, §36.304).

10. Pursuant to 42 U.S.C. §12181(7) and 28 C.F.R. §36,104, Defendant's facility is a place of public accommodation in that the facility is a restaurant providing goods and services to the public. Therefore, the public accommodation is covered by the ADA and must comply with the ADA.

## COUNT ONE
## VIOLATION OF THE ADA, TITLE III
## 42 U.S.C. §12182(b)(2)(A)(iv)
## (Architectural Barriers)

**Defendant's Existing Facility is Subject to the 2010 ADA Design
Standards for the Portions of the Facility Addressed in this Complaint**

11. Plaintiff is informed and believes based on publicly available information
that the building in which Defendant's facility is located at 128 Interstate
Drive, Greenville, Alabama 36037 was first constructed in 2015.

12. The ADA was enacted requiring that facilities constructed prior to January
26, 1992, are considered an existing facility, such that those facilities must
remove architectural barriers where such removal is readily achievable. 42
U.S.C. § 12182(b)(2)(A)(iv). All alterations made to existing facilities
after January 26, 1992, and all new construction after January 26, 1993,
must be readily accessible to and usable by individuals with disabilities,
including individuals who use wheelchairs. 42 U.S.C. § 12183(a) - (b). 28
C.F.R. § 36.402. "Readily accessible to and usable by . . ." is the new
construction standard, which requires compliance with the Department of
Justice (hereinafter, "DOJ") standards. 42 U.S.C. § 12183(a)(1); 28 C.F.R.
§ 36.406. The only defense for failing to provide readily accessible and
usable buildings constructed under the new construction standards is if the
design and construction of the building to be readily accessible and usable

6

is structurally impracticable. 42 U.S.C. § 12183(a)(1). The structural impracticability defense applies only in rare circumstances of extraordinary terrain. 28 C.F.R. § 36.401(c). "Readily accessible to and usable by . . ." is also the alterations standard. 42 U.S.C. § 12183(a)(2). Alterations must be made to the maximum extent feasible. 42 U.S.C. § 12183(a)(2); 28 C.F.R. § 36.402. An alteration is a change to a place of public accommodation or commercial facility that affects or could affect the usability of the facility or any part thereof. 28 C.F.R. § 36.402(b).

13. New construction and alterations must comply with either the DOJ's 1991 Standards for Accessible Design or the 2010 Standards for Accessible Design. 28 C.F.R. § 36.406 establishes whether the 1991 Standards for Accessible Design or 2010 Standards for Accessible Design apply: New construction and alterations subject to §§ 36.401 or 36.402 shall comply with the 1991 Standards if the date when the last application for a building permit or permit extension is certified to be complete by a state, county, or local government is before September 15, 2010, or if no permit is required, if the start of physical construction or alterations occurs before September 15, 2010. 28 C.F.R. § 36.406(a)(1). New construction and alterations subject to §§ 36.401 or 36.402 shall comply either with the 1991 Standards or with the 2010 Standards if the date when the last application for a

building permit or permit extension is certified to be complete by a state, county, or local government is on or after September 15, 2010, and before March 15, 2012, or if no permit is required, if the start of physical construction or alterations occurs on or after September 15, 2010, and before March 15, 2012. 28 C.F.R. § 36.406(a)(2). New construction and alterations subject to §§ 36.401 or 36.402 shall comply with the 2010 Standards if the date when the last application for a building permit or permit extension is certified to be complete by a state, county, or local government is on or after March 15, 2012, or if no permit is required, if the start of physical construction or alterations occurs on or after March 15, 2012. Where the facility does not comply with the 1991 Standards, the 2010 Standards are applicable. *See* 28 C.F.R. § 36.406(5)(ii) which states, "Newly constructed or altered facilities or elements covered by §§ 36.401 or 36.402 that were constructed or altered before March 15, 2012 and that do not comply with the 1991 Standards shall, on or after March 15, 2012, be made accessible in accordance with the 2010 Standards."

14. For the architectural barriers at issue in this case, the 2010 Standards for Accessible Design are applicable.

**Plaintiff's Concrete and Particularized Standing to Pursue an Injunction**

15. Defendant has discriminated, and continues to discriminate, against Plaintiff, and others who are similarly situated, by denying full and equal access to, and full and equal enjoyment of goods, services, facilities, privileges, advantages and/or accommodations at Defendant's facility in derogation of 42 U.S.C. § 12101 *et seq.*, and as prohibited by 42 U.S.C. § 12182 *et seq*. As new construction, the building must be readily accessible to and usable by individuals with disabilities. 42 U.S.C. § 12183 (a) - (b). Defendant's failure to remove the existing barriers thus violates 42 U.S.C. § 12182(b)(2)(A)(iv), which requires removal of architectural barriers.

16. Prior to the filing of this lawsuit, Plaintiff was denied full and safe access to all of the benefits, accommodations, and services offered to individuals without disabilities within and about Defendant's public accommodation. Plaintiff's access was inhibited by each of the described architectural barriers detailed in this Complaint, which remain at the public accommodation in violation of the ADA. Because of the foregoing, Plaintiff has suffered an injury-in-fact in precisely the manner and form that the ADA was enacted to guard against.

17. Plaintiff has definite plans to return to the facility in the future, as described in paragraph six (6). Plaintiff will return to the facility within the

9

next few months, not only to enjoy the goods and services at the facility, but also to see if Defendant has repaired the architectural barriers and changed its policies, practices, and procedures. Plaintiff will continue to do so even when the facility is repaired, because the facility is an enjoyable place. Plaintiff certainly would not want to stop going when the facility is repaired, and its practices are modified. The barriers are not just created by construction issues; instead, many of the barriers are created by human activity, from the way Defendant's workers at the public accommodation use the architectural elements of the public accommodation. The barriers created by human activity will need to be reviewed and maintained forever, to be sure Defendant's management and workers continuously act in a manner that does not create barriers. Absent remedial action by Defendant, Plaintiff will continue to encounter the architectural barriers, and the discriminatory policies, practices, and procedures described herein, and as a result, be discriminated against by Defendant on the basis of Plaintiff's disabilities. The Eleventh Circuit held in *Houston v. Marod Supermarkets*, 733 F.3d 1323 (11th Cir. 2013), when architectural barriers have not been remedied ". . . there is a 100% likelihood that plaintiff . . . will suffer the alleged injury again when plaintiff returns to the store." Due to the definiteness of Plaintiff's plan to continue visiting the subject facility, there

10

exists a genuine threat of imminent future injury. Plaintiff's stated intent
to return is plausible.

## Architectural Barriers

18. Pursuant to the mandates of 42 U.S.C. § 12134(a), on July 26, 1991, the
DOJ, Office of the Attorney General, promulgated Federal Regulations to
implement the requirements of the ADA. 28 C.F.R. Part 36.

19. Plaintiff has been from the parking lot to the entrance; from the entrance
to the toilet room; the toilet room itself; from the entrance to the dining
areas; the dining areas themselves; throughout circulation paths and
accessible routes, and service areas, paths of travel, and in particular but
not limited to, all of which is more specifically described below. Moreover,
Defendant's facility located at 128 Interstate Drive, Greenville, Alabama
36037, violates the ADA in particular but not limited to:

(1) Defendant provides a parking area with parking spaces that have routes
connecting the parking spaces to the entrance of the establishment for
able-bodied individuals, but Defendant fails to provide that same level
of access by providing an ADA accessible route from accessible van
parking spaces to an accessible entrance for non-able-bodied
individuals, which segregates and relegates individuals with disabilities
to inferior benefits of the goods and services provided at Defendant's

11

place of public accommodation, which includes but is not limited to, the following failures of Defendant:

a. Defendant fails to maintain the parking area and associated accessible route in conformance with the ADA Standards for Accessible Design in all the ways that are required to be readily accessible to and usable by disabled individuals, which includes but is not limited to, van parking spaces failing to be located on an accessible route to an accessible entrance, which has the discriminatory effect of rendering the parking spaces and associated elements as unusable by disabled individuals;

b. The parking area fails to maintain the required amount of accessible van accessible parking spaces, including associated access aisles, in operable condition by conforming with the ADA Standards for Accessible Design so that the van parking spaces measure 132 inches wide minimum with adjoining compliant access aisles that measure 60 inches wide minimum, or alternatively, 96 inch wide spaces with adjoining 96 inch wide access aisles, and connect to an adjoining accessible route to an accessible entrance of the facility;

c. The parking area fails to maintain the required amount of accessible van accessible parking spaces, including associated access aisles, in operable condition by conforming with the ADA Standards for Accessible Design so that the accessible van accessible parking spaces' adjacent access aisles extend the full length of the accessible van accessible parking spaces and are marked so as to discourage parking in the access aisles, which renders the access aisles unusable by the disabled;

d. The parking area fails to maintain the required amount of accessible van accessible parking spaces, including adjoining access aisles, in operable condition by conforming with the ADA Standards for Accessible Design so that the accessible van accessible parking spaces' adjacent access aisles do not overlap the vehicular way;

e. The parking area fails to maintain the required amount of accessible van accessible parking spaces, including adjoining access aisles, in operable condition by conforming with the ADA Standards for Accessible Design so that the accessible van accessible parking spaces are identified with van accessible signage, including the international symbol of accessibility, that

13

is mounted 60 inches minimum above the finish floor or ground

surface measured to the bottom of the sign;

(2) Defendant provides a parking area with parking spaces with routes

connecting the parking spaces to the entrance of the facility for able-

bodied individuals, but Defendant fails to provide that same level of

access by providing an ADA accessible route from accessible parking

spaces to an accessible entrance for disabled individuals, which

segregates and relegates individuals with disabilities to inferior benefits

of the goods and services provided at Defendant's place of public

accommodation, which includes but is not limited to, the following

failures of Defendant:

    a. Defendant fails to maintain the parking area and associated

accessible route in conformance with the ADA Standards for

Accessible Design in all the ways that are required to be readily

accessible to and usable by disabled individuals, which includes

but is not limited to, providing the necessary components on an

ADA accessible route to an accessible entrance, including

without limitation, ramps, walking surfaces, and other associated

elements which has the discriminatory effect of rendering the

14

parking spaces and associated elements as unusable by disabled individuals;

b. The accessible route fails to maintain a ramp and associated components in operable condition by conforming with the ADA Standards for Accessible Design so that the adjacent surfaces at transitions at curb ramps to walks, gutters, and streets are at the same level;

c. The accessible route fails to maintain an accessible ramp and associated components in operable condition by conforming with the ADA Standards for Accessible Design, so the running slope is not steeper than 1:12;

d. The accessible route fails to maintain an accessible ramp and associated components in operable condition by conforming with the ADA Standards for Accessible Design, so the cross slope is not steeper than 1:48;

e. The accessible route fails to maintain an accessible ramp and associated components in operable condition by conforming with the ADA Standards for Accessible Design so there are no changes in level other than the running slope and cross slope;

f. The accessible route fails to maintain an accessible ramp and associated components in operable condition by conforming with the ADA Standards for Accessible Design in all the ways required to be usable by disabled individuals, which includes but is not limited to, providing a ramp that is 36 inches wide minimum with a level landing at the top and bottom of the ramp measuring 60 inches long minimum and at least as wide as the ramp;

g. The accessible route fails to maintain an accessible ramp and associated components in operable condition by conforming with the ADA Standards for Accessible Design so that the curb ramp does not protrude into vehicular traffic lanes, parking spaces, or parking access aisles;

(3) The mats are not firm, stable, or otherwise properly secured to the floor.

(4) Defendant provides several types of dining surfaces distributed throughout the facility for the consumption of food or drink at the indoor dining area, which includes booth dining surfaces, bar dining surfaces, and table dining surfaces for able-bodied individuals, but Defendant fails to maintain that same level of service to individuals with disabilities, which segregates and relegates individuals with

16

disabilities to inferior benefits of the goods and services provided at Defendant's place of public accommodation, which includes but is not limited to, the following failures of Defendant:

a. There is not at least 5% of each type of seating space distributed throughout the indoor dining area that is maintained in conformance with the ADA Standards for Accessible Design in all the ways that are required to be readily accessible to and usable by individuals with disabilities, which includes but is not limited to, maintaining an accessible route to the dining surfaces, which has the discriminatory effect of rendering the indoor dining area seating spaces and associated elements as unusable by disabled individuals;

b. There is not at least 5% of each type of seating space distributed throughout the indoor dining area that is maintained in operable condition with the ADA Standards for Accessible Design so that the seating spaces maintain the required t-shaped and/or circular turning clear floor space;

c. There is not at least 5% of each type of seating spaces distributed throughout the indoor dining area that is maintained in operable condition with the ADA Standards for Accessible Design so the

seating spaces maintain the required 30x48 inches of clear floor space that is positioned for a forward approach to the dining surface;

d. There is not at least 5% of each type of seating spaces distributed throughout the indoor dining area that is maintained in operable condition with the ADA Standards for Accessible Design so that the tops of the dining surfaces measure 28 inches minimum and 34 inches maximum above the finish floor, which includes the required 30 inches of clear dining surface so that the surface does not prohibit disabled individuals from being equally afforded the opportunity to sit and enjoy the goods and services at the facility;

(5) Defendant provides dining surfaces at the outdoor dining area for able-bodied individuals, but fails to maintain that same level of service to individuals with disabilities, which segregates and relegates individuals with disabilities to inferior benefits of the goods and services provided at Defendant's place of public accommodation, which includes but is not limited to, the following failures of Defendant:

a. There is not at least 5% of the seating spaces at the outdoor dining surfaces that are maintained in conformance with the ADA Standards for Accessible Design in all the ways that are required

18

to be readily accessible to and usable by disabled individuals, which includes but is not limited to, the accessible route to the outdoor dining surfaces, which has the discriminatory effect of rendering the outdoor seating spaces and associated elements as unusable by disabled individuals;

b. There is not at least 5% of the seating spaces at the outdoor dining surfaces that are maintained in operable condition with the ADA Standards for Accessible Design so that the outdoor seating spaces maintain the required t-shaped and/or circular turning clear floor space;

c. There is not at least 5% of the seating space at the outdoor dining surfaces that are maintained in operable condition with the ADA Standards for Accessible Design so that the outdoor seating spaces maintain the required 30x48 inches of clear floor space that is positioned for a forward approach to the dining surfaces;

d. There is not at least 5% of the seating spaces at the outdoor dining surfaces that are maintained in operable condition with the ADA Standards for Accessible Design so that the tops of the dining surfaces measure 28 inches minimum and 34 inches maximum above the finish floor, which includes the required 30 inches of

19

clear dining surface so that the surface does not prohibit disabled individuals from being equally afforded the opportunity to sit and enjoy the goods and services at the facility;

(6) Defendant provides dining surfaces in the bar area for able-bodied individuals, but Defendant fails to maintain that same level of service to individuals with disabilities, which segregates and relegates individuals with disabilities to inferior benefits of the goods and services provided at Defendant's place of public accommodation, which includes but is not limited to, the following failures of Defendant:

    a. There is not at least 5% of the seating spaces at the bar that is maintained in conformance with the ADA Standards for Accessible Design in all the ways that are required to be readily accessible to and usable by disabled individuals, which includes but is not limited to, the accessible route to the bar dining surfaces, which has the discriminatory effect of rendering the indoor bar area seating spaces and associated elements as unusable by disabled individuals;

    b. There is not at least 5% of the seating spaces at the bar that are maintained in operable condition with the ADA Standards for

Accessible Design so that the seating spaces maintain the required t-shaped and/or circular turning clear floor space;

c.  There is not at least 5% of the seating spaces at the indoor bar area that are maintained in operable condition with the ADA Standards for Accessible Design so that the bar seating spaces maintain the required 30x48 inches of clear floor space that is positioned for a forward approach to the bar dining surface;

d.  There is not at least 5% of the seating spaces at the indoor bar area that are maintained in operable condition with the ADA Standards for Accessible Design so that the tops of the bar dining surfaces measure 28 inches minimum and 34 inches maximum above the finish floor, which includes the required 30 inches of clear dining surface so that the surface does not prohibit disabled individuals from being equally afforded the opportunity to sit and enjoy the goods and services at the facility;

(7) Defendant provides a restroom for able-bodied individuals, but fails to afford non-able-bodied individuals the same opportunity to participate in, or benefit from, a good, service, facility, privilege, advantage, or accommodation that is equal to the experience afforded to individuals

21

without disabilities, which includes but is not limited to, the following
failures of Defendant:

a.   The accessible stall door is not self-closing;

b.   The accessible stall door does not have door pulls located on both
sides of the accessible stall door;

c.   The restroom fails to maintain at least one ADA Accessible toilet
compartment in operable condition by conforming with the ADA
Standards for Accessible Design so that the toilet paper
dispenser's operable parts comply with the applicable standards
for accessible design and is otherwise located 7-9 inches from
the front of the water closet;

d.   The restroom fails to maintain at least one ADA accessible toilet
compartment in operable condition by conforming with the ADA
Standards for Accessible Design so that the rear wall grab bar
conforms with the ADA Standards for Accessible Design in all
the ways that it is required to be readily accessible to and usable
by disabled individuals, which includes but is not limited to,
maintaining a 36 inch long grab bar installed so that it is located
12 inches on the closed side of the toilet room and 24 inches on

22

the transfer side and mounted so that the top gripping surface measures 33-36 inches above the finished floor;

e. There is not at least one ADA accessible lavatory that is maintained in a usable condition so that the top surface of the rim on the lavatory sink measures a maximum of 34 inches above the finished floor and positioned for a forward approach;

f. There is not at least one lavatory with a mirror that is maintained in a usable condition so that the bottom reflecting surface of the mirror measures a maximum of 40 inches above the finished floor;

20. To date, the barriers to access and other violations of the ADA still exist and have not been remedied or altered in such a way as to effectuate compliance with the provisions of the ADA.

21. Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action. Plaintiff is entitled to have Plaintiff's reasonable attorney's fees, costs, and expenses paid by Defendant pursuant to 42 U.S.C. §12205.

22. Pursuant to 42 U.S.C. §12188, this Court is vested with the authority to grant Plaintiff's injunctive relief, including an Order to alter the discriminating facility to make it readily accessible to, and usable by,

individuals with disabilities to the extent required by the ADA, and closing

the facility until the requisite modifications are completed, and to further

order Defendant to modify its policies, practices, and procedures, to

provide equal use of its facilities, services, and benefits to disabled

individuals.

## COUNT TWO
## VIOLATION OF THE AMERICANS WITH DISABILITIES ACT, TITLE III
## 42 U.S.C. § 12182(b)(2)(A)(ii)
### (Practices, procedures, and policies denying equal benefits)

### ADA Title III Prohibits Other Discrimination in Addition to Architectural Barriers

23.  Plaintiff re-alleges paragraphs 1-22 above.

24.  The ADA, Title III, provides a private right of action for "any person who

is being subjected to discrimination on the basis of disability in violation

of" Title III. 42 U.S.C. § 12182(a)(1).

25.  The ADA, Title III, specifically makes it unlawful to provide individuals

with disabilities with an unequal benefit, and to relegate individuals with

disabilities to a different or separate benefit. 42 U.S.C. §§

12182(b)(1)(A)(ii)-(iii); 28 C.F.R. § 36.202(b)-(c). In other words, the

disabled must receive equal benefits as the nondisabled. Further, 28

C.F.R. § 302(b) requires that goods, services, and accommodations be

provided to individuals with disabilities in "the most integrated setting appropriate." 42 U.S.C. § 12182(b)(1)(B); 28 C.F.R. § 36.203(a). Similarly, the Preamble in addition to recognizing that persons who use wheelchairs and mobility aids have been forced to sit apart from family and friends, also recognizes that persons who use wheelchairs and mobility aids historically have been provided "segregated accommodations" compared to non-disabled individuals; thus, relegating persons who use wheelchairs "to the status of second-class citizens." *See* 28 C.F.R. pt. 36, App. B, at 631-633, 651 (2000) (discussion of §§ 36.308, 36.203).

26. Congress enacted the ADA in light of its findings that "individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities." 42 U.S.C. § 12101(a)(5).

27. To address this broad range of discrimination in the context of public accommodations, Congress enacted ADA, Title III, which provides in

part: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. 12182.

28. By its clear text, ADA, Title III requires a public accommodation to provide individuals with disabilities more than simple physical access. Removal of architectural barriers as required by Count One of this Complaint is but one component of compliance with ADA, Title III. Congress recognized that "individuals with disabilities continually encounter various forms of discrimination" including not only barriers to physical access, but also other forms of exclusion and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities. 42 U.S.C. 12101(a)(5); *see also*, H.R. Rep. No. 485, Pt. 2, 101st Cong., 2d Sess. 35-36 (1990) ("lack of physical access to facilities" was only one of several "major areas of discrimination that need to be addressed"); H.R. Rep. No. 485, Pt. 3, 101st Cong., 2d Sess. 54 (1990) ("It is not sufficient to only make facilities accessible and usable; this title prohibits, as well, discrimination in the provision of programs and activities conducted by the public accommodation.").

29.   For that reason, the ADA applies not only to barriers to physical access

to places of public accommodation, but also to any policy, practice, or

procedure that operates to deprive or diminish disabled individuals' full

and equal enjoyment of the privileges and services offered by the public

accommodation to the public. 42 U.S.C. § 12182. Thus, a public

accommodation may not have a policy, practice or procedure that

excludes individuals with disabilities from services. 42 U.S.C. §

12182(b)(2)(A)(ii). The Eleventh Circuit held in *Rendon v. Valleycrest*

*Prod., Ltd.*, 294 F.3d 1279, (11th Cir. 2002) that:

> A reading of the plain and unambiguous statutory
> language at issue reveals that the definition of
> discrimination provided in Title III covers both
> tangible barriers (emphasis added), that is, physical
> and architectural barriers that would prevent a
> disabled person from entering an accommodation's
> facilities and accessing its goods, services and
> privileges, see 42 U.S.C. § 12182(b)(2)(A)(iv), and
> intangible barriers (emphasis added), such as
> eligibility requirements and screening rules or
> discriminatory policies and procedures that restrict
> a disabled person's ability to enjoy the Defendants
> entity's goods, services and privileges.

## Defendant's Failed Practices and Lack of Policies Are Discriminatory

30.   Pursuant to 42 U.S.C. § 12182(b)(2)(A)(ii) discrimination includes:

> [A] failure to make reasonable modifications in
> policies, practices, or procedures, when such

27

> modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations.

31. Accordingly, a place of public accommodation must modify a policy or practice that has the consequence of, or tends to deny, access to goods or services to the disabled. Similarly, a place of public accommodation must not have a policy or practice that "has a discriminatory effect in practice" of preventing disabled individuals from realizing the full and equal enjoyment of the goods and services the public accommodation offers to potential customers. *Nat'l Fed'n of the Blind v. Scribd Inc.*, 97 F.Supp.3d 565 (D. Vt. 2015).

32. As detailed below, Defendant has failed to make reasonable modifications in its policies, practices, and procedures that are necessary to afford its goods, services, facilities, privileges, advantages, or accommodations to individuals with restricted mobility. By failing to take such efforts that may be necessary to ensure that no individual with a disability is excluded, Defendant denied services, segregated, or otherwise treated Plaintiff differently than individuals who are not disabled. Pursuant to 42 U.S.C. § 12182(b)(2)(A), Defendant has

discriminated against Plaintiff. Defendant will continue that discrimination forever until enjoined as Plaintiff requests. The discrimination is described more particularly in the following paragraphs.

33. Defendant either has no policies, practices, and procedures to remove architectural barriers or else it does not abide by them. The rampant architectural barriers previously identified in Count One establish that Defendant has failed to create, adopt, and/or implement ADA Title III compliance policies, procedures, and practices as to architectural barriers.

34. Defendant's use of its facility, and its practices at the facility located at 128 Interstate Drive, Greenville, Alabama 36037, creates barriers and in so doing denies Plaintiff the full and equal enjoyment of the facility. Those practices include:

   a) Defendant makes the parking area inaccessible for use by the disabled by failing to provide ADA accessible parking and routes, which denies Plaintiff full and equal use of the parking, which the able-bodied can use fully and equally;

   b) Defendant makes the seating inaccessible for use by the disabled,

which means Plaintiff cannot fully and equally use the seating in the way the non-disabled do, because the non-disabled have seating they can use;

c) Defendant makes the bar counter inaccessible for use by the disabled, which means Plaintiff cannot fully and equally use the bar counter in the way the non-disabled do, because the non-disabled have a bar counter they can use;

d) Defendant makes its toilet room inaccessible for use by the disabled by failing to maintain any ADA accessible elements within the toilet room so that Plaintiff is afforded the opportunity to independently use the toilet room, or clean up, or move into and throughout the toilet room, whereas non-disabled individuals are able to independently use the toilet room;

e) Defendant fails to provide a place for the disabled to enjoy the goods and services like able-bodied people can;

f) Defendant's policies, practices, and procedures are conducted without regard to disabled individuals;

35. As the continuing architectural barriers and the failure to provide full and equal use of the facility establishes, Defendant has no policies, practices,

30

or procedures, or else it has failed to implement them, to ensure that any removal of architectural barriers is permanent. 42 U.S.C. § 12182(b)(2)(a)(iv) and (v).

36. As the continuing architectural barriers and the failure to provide full and equal use of the facility establishes, Defendant's existing practice is both in effect and/or explicitly to remediate ADA Title III architectural barriers only upon demand by the disabled.

37. As the continuing architectural barriers and the failure to provide full and equal use of the facility establishes, Defendant has no policies, practices, and procedures or else it failed to create, implement, and maintain policies and procedures to ensure individuals with disabilities are able to have the same experience at its facility as individuals without disabilities, 42 U.S.C. 12182(b)(1)(A), and in particular the opportunity to have full and equal access to all of the goods, services, privileges, advantages, or accommodations of Defendant's facility, as described above in detail.

38. As the continuing architectural barriers and the failure to provide full and equal use of the facility establishes, Defendant has failed to create, implement, and maintain a policy of complying with ADA building design standards and regulations.

39. To date, Defendant's discriminating policies, practices, and/or procedures have not been reasonably modified to afford goods, services, facilities, privileges, advantages, or other accommodations to individuals with disabilities.

40. A reasonable modification in the policies, practices, and procedures described above will not fundamentally alter the nature of such goods, services, facilities, privileges, advantages, and accommodations. The Plaintiff hereby demands that Defendant both create and adopt a corporate practice and policy that Defendant (1) will fully comply with Title III, ADA, and all implementing regulations so that architectural barriers identified above are permanently removed from Defendant's facility consistent with the ADA; (2) Defendant will provide the disabled, including those with mobility limitations full and equal use and enjoyment of Defendant's facility; (3) Defendant will modify its practice of making ADA Title III architectural barrier remediations only upon demand by the disabled.

41. As pled above, Defendant operates the Wintzell's facility located at 128 Interstate Drive, Greenville, Alabama 36037; therefore, pursuant to 42 U.S.C. § 12182, is responsible for creating, implementing, and maintaining policies, practices and procedures, as alleged above.

42. The ADA is over twenty-five (25) years old. Defendant knows Defendant must comply with the ADA, Title III. The ADA, Title III requires modifications in policies, practices, and procedures to comply with the ADA, as pled above in the statute. 42 U.S.C. §12182(b)(2)(A)(ii).

43. By this Complaint, Plaintiff provides sufficient notice of Plaintiff's demands for an alteration in Defendant's policies, practices, and procedures.

44. Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action. Plaintiff is entitled to have Plaintiff's reasonable attorney's fees, costs, and expenses paid by Defendant pursuant to 42 U.S.C. § 12205.

45. Pursuant to 42 U.S.C. § 12188, this Court is authorized to enjoin these illegal policies, practices, and procedures.

**COUNT THREE**
**VIOLATION OF THE AMERICANS WITH DISABILITIES ACT**
**(Denial of Full and Equal Enjoyment)**

46. Plaintiff re-alleges paragraphs 1-45 above.

47. 42 U.S.C. § 12182(a) provides:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

48. Congress enacted the ADA upon finding, among other things, that "society has tended to isolate and segregate individuals with disabilities" and that such forms for discrimination continue to be a "serious and pervasive social problem." 42 U.S.C. § 12101(a)(2).

49. Congress also found that: "individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities, 42 U.S.C. § 12101(a)(5); "the nation's proper goals regarding individuals with disabilities are to assure equality of opportunity, full participation, independent living, and economic self-sufficiency for such individuals;" 42 U.S.C. § 12101(a)(7). Congress even found that: "the continuing existence of unfair and unnecessary discrimination and prejudice denies

people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous, and costs the United States billions of dollars in unnecessary expenses resulting from dependency and nonproductivity." 42 U.S.C. § 12101(a)(8).

50. In response to these findings, Congress explicitly stated that the purpose of the ADA is to provide "a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities" and "clear, strong, consistent, enforceable standards addressed discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1)-(2).

51. The ADA provides, *inter alia*, that it is discriminatory to subject an individual or class of individuals on the basis of a disability "to a denial of the opportunity of the individual or class to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity." 42 U.S.C. § 12182(a)(i).

52. The ADA further provides that it is discriminatory "to afford an individual or class of individuals, on the basis of a disability . . . with the opportunity to participate in or benefit from a good, service, facility, privilege, advantage, or accommodation that is not equal to that afforded

35

to other individuals." 42 U.S.C. § 12182(a)(ii).

53. Congress enacted the ADA in light of its findings that "individuals with disabilities continually encounter various forms of discrimination, including outright intentional exclusion, the discriminatory effects of architectural, transportation, and communication barriers, overprotective rules and policies, failure to make modifications to existing facilities and practices, exclusionary qualification standards and criteria, segregation, and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities." 42 U.S.C. 12101(a)(5). Defendant's acts and omissions alleged herein are in violation of the ADA, 42 U.S.C. §§ 12101, *et seq.*, and the regulations promulgated thereunder.

54. To address this broad range of discrimination in the context of public accommodations, Congress enacted Title III, which by its clear text, requires a public accommodation to provide individuals with disabilities more than simple physical access. Congress recognized that "individuals with disabilities continually encounter various forms of discrimination" including not only barriers to physical access, but also other forms of exclusion and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities. 42 U.S.C. 12101(a)(5); *see also* H.R. Rep. No. 485, Pt. 2, 101st Cong., 2d Sess. 35-36 (1990) ("lack of physical

36

access to facilities" was only one of several "major areas of discrimination that need to be addressed"); H.R. Rep. No. 485, Pt. 3, 101st Cong., 2d Sess. 54 (1990) ("It is not sufficient to only make facilities accessible and usable; this title prohibits, as well, discrimination in the provision of programs and activities conducted by the public accommodation.").

55. For that reason, the ADA applies not only to barriers to physical access to business locations, but also to any policy, practice, or procedure that operates to deprive or diminish disabled individuals' full and equal enjoyment of the privileges and services offered by the public accommodation to the public. 42 U.S.C. 12182. Thus, a public accommodation may not have a policy, practice or procedure that excludes individuals with disabilities from services. 42 U.S.C. § 12182(b)(1)(A)(i).

56. The keystone for this analysis is Defendant must start by considering how its facility is used by non-disabled guests and then take reasonable steps to provide disabled guests with a like experience. *Spector v. Norwegian Cruise Line Ltd.,* 545 U.S. 119, 128–29, 125 S.Ct. 2169, 162 L . E d . 2d 97 (2005); *see also, Baughman v. Walt Disney World Company,* 685 F.3d 1131, 1135 (9th Cir. 2012).

57. Plaintiff, Patrick Dunn, was denied full and equal access to Defendant's public accommodation. Plaintiff specifically and definitely wants to return to the Defendant's public accommodation. More specifically, Plaintiff wants to be afforded the same level of service that is offered to non-disabled individuals, which Defendant has failed to provide to Plaintiff as follows: Defendant failed to provide accessible parking and associated accessible routes to an accessible entrance; Defendant failed to provide accessible seating; Defendant failed to provide an accessible bar counter; Defendant failed to provide an accessible toilet room for disabled individuals, which means that, unlike the able-bodied, the disabled are challenged or denied the opportunity to independently use the toilet room, clean up after using the toilet room, move throughout the toilet room, and prohibited from using all the other elements of the toilet room; Defendant's continued failure to maintain ADA accessibility as an integral part of the highest possible experience that non-disabled individuals get to independently enjoy has segregated or otherwise treated Plaintiff and others similarly situated differently, in that, Defendant's public accommodation makes Plaintiff dependent on family or an independent third party, which is not the same experience that Defendant affords to non-disabled individuals and all the foregoing

38

failures by Defendant inhibited Plaintiff from having the same experience that non-disabled individuals have when at Defendant's public accommodation.

58. In its Preamble to the Title III regulation, the DOJ recognized that mobility impaired persons including persons in wheelchairs should have the same opportunities to enjoy the goods and services and other similar events of public accommodation with their families and friends, just as other non-disabled individuals do. The DOJ further recognized that providing segregated accommodations and services relegates persons with disabilities to the status of second-class citizens. 28 C.F.R. pt. 36, App. B, § 36.203.

59. The ADA specifically makes it unlawful to provide individuals with disabilities with an unequal benefit, and to relegate individuals with disabilities to a "different or separate" benefit. 42 U.S.C. §§ 12182(b)(1)(A)(ii)-(iii); 28 C.F.R. § 36.202(b)-(c). Further, 28 C.F.R. § 302(b) requires that goods, services, and accommodations be provided to individuals with disabilities in "the most integrated setting appropriate." 42 U.S.C. § 12182(b)(1)(B); 28 C.F.R. § 36.203(a). Similarly, the Preamble in addition to recognizing that persons who use wheelchairs have been forced to sit apart from family and friends, also recognizes that

persons who use wheelchairs historically have been provided inferior seating and segregated accommodations compared to non-disabled individuals, thus relegating persons who use wheelchairs "to the status of second-class citizens." *See* 28 C.F.R. pt. 36, App. B, at 631-633, 651 (2000) (discussion of §§ 36.308, 36.203).

60. Thus, Defendant's use of the accessible features constitutes statutory discrimination in violation of the ADA, because Defendant has segregated and separated the disabled from the non-disabled individuals. "The goal is to eradicate the invisibility of the handicapped. Separate-but-equal services do not accomplish this central goal and should be rejected." *H.R. Rep. No. 101-485(III),* at 50, *1990 U.S.C.C.A.N* at 473. The ADA provides a broad mandate to "eliminate discrimination against disabled individuals, and to integrate those individuals into the economic and social mainstream American life." *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 675; 121 S.Ct. 1879, 149 L.Ed.2d 904 (2001) (quoting H.R.Rep. No. 101-485, pt. 2, p.50 (1990), reprinted in 1990 U.S.C.C.A.N. 303, 332).

61. Defendant discriminated against Plaintiff by denying Plaintiff "full and equal enjoyment" and use of the goods, services, facilities, privileges and accommodations of the facility during each visit. Each incident of

deterrence denied Plaintiff an equal "opportunity to participate in or benefit from the goods, services, facility, privilege, advantage, or accommodations" of Defendant's public accommodation.

62. Defendant's conduct and Defendant's unequal treatment to Plaintiff constitutes continuous violations of the ADA and absent a Court ordered injunction from doing so, Defendant will continue to treat Plaintiff and others similarly situated unequally.

63. Defendant's failure to maintain the accessible features that are required to be readily accessible to and usable by individuals with disabilities constitutes continuous discrimination and absent a Court ordered injunction, Defendant will continue to not maintain the required accessible features at Defendant's facility. 28 C.F.R.§ 36.211(a).

64. Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action. Plaintiff is entitled to have Plaintiff's reasonable attorney's fees, costs, and expenses paid by Defendant pursuant to 42 U.S.C. § 12205.

65. Pursuant to 42 U.S.C. § 12188, this Court is authorized to enjoin these illegal acts of Defendant.

## COUNT FOUR
## VIOLATION OF THE AMERICANS WITH DISABILITIES ACT, TITLE III
## 42 U.S.C. § 12183(a)(1)

### (Failure to design and construct facility for ADA compliance)

66.  Plaintiff re-alleges paragraphs 1 – 65.

67.  42 U.S.C. § 12183(a)(1) provides:

> [Discrimination includes] a failure to design and construct facilities for first occupancy later than 30 months after July 26, 1990, that are readily accessible to and usable by individuals with disabilities, except where an entity can demonstrate that it is structurally impracticable to meet the requirements of such subsection in accordance with standards set forth or incorporated by reference in regulations issued under this subchapter.

68.  Congress passed the ADA in part because "historically, society has tended to isolate and segregate individuals with disabilities, and such forms of discrimination . . . continue to be a serious and pervasive social problem." 42 U.S.C. § 12101(a)(2). Congress found that this discrimination included "segregation and relegation to lesser services, programs, activities, benefits, jobs, or other opportunities." *Id.* § 12101(a)(5). In its Preamble to the Title III regulation, the Department of Justice recognized that persons in wheelchairs should have the same opportunities to enjoy the goods and services and other similar events of

42

a public accommodation with their families and friends, just as other non-disabled individuals do. The DOJ further recognized that providing segregated accommodations and services relegates persons with disabilities to the status of second-class citizens. 28 C.F.R. pt. 36, App. B, § 36.203.

69. To eliminate such segregation Congress enacted the requirement that facilities be "readily accessible to and usable by individuals with disabilities". This very requirement is intended to enable persons with disabilities "to get to, enter and use a facility." H.R. Rep. No. 101-485(III), at 499-500 (1990). It requires "a high degree of convenient accessibility," *id.*, as well as access to the same services that are provided to members of the general public. "For new construction and alterations, the purpose is to ensure that the service offered to persons with disabilities is equal to the service offered to others." *Id.*

70. As the legislative history makes clear, the ADA is geared to the future with the goal being that, over time, access will be the rule rather than the exception. Thus, the ADA only requires modest expenditures to provide access in existing facilities, while requiring all new construction to be accessible. H.R. Rep. 485, Part 3, 101st Cong., 2d Sess. 63 (1990).

71. To realize its goal of a fully accessible future, Congress required that all

43

newly constructed facilities be designed and constructed according to architectural standards set by the Attorney General. 42 U.S.C. §§ 12183(a), 12186(b). Those Standards for Accessible Design are incorporated into the DOJ's regulations implementing Title III of the ADA, 28 C.F.R. Part 36, Appendix.

72. The Standards set architectural requirements for newly constructed buildings that apply to all areas of the facility, from parking areas, interior walkways and entrances, common areas, seating, toilet rooms, and sales/service areas.

73. Defendant operates the Wintzell's facility located at 128 Interstate Drive, Greenville, Alabama 36037 and is directly involved in the designing and/or construction of the public accommodation in this litigation for first occupancy after January 1993.

74. Defendant was and is required to design and construct the public accommodation to be "readily accessible to and usable by individuals with disabilities." Defendant violated the statute by failing to design and construct its restaurant to be readily accessible to and usable by individuals with disabilities including individuals who use wheelchairs. Defendant further violated the statute by failing to design and construct its restaurant in compliance with the ADA during planned alterations as

described throughout this Complaint.

75. To date, Defendant's discriminating actions continue.

76. Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action. Plaintiff is entitled to have Plaintiff's reasonable attorney's fees, costs, and expenses paid by Defendant pursuant to 42 U.S.C. § 12205.

77. Pursuant to 42 U.S.C. § 12188, this Court is authorized to enjoin these illegal actions by Defendant.

**WHEREFORE**, premises considered, Plaintiff, Patrick Dunn, demands judgment against Defendant on Counts One through Four and requests the following injunctive and declaratory relief:

1. That the Court declare that the business operated by Defendant as well as all Defendant's illegal actions described herein violate the ADA, as more particularly described above;

2. That the Court enter an order enjoining Defendant to alter the facility to make it accessible to and usable by individuals with disabilities to the full extent required by Title III of the ADA, to comply with 42 U.S.C. § 12182(b)(2)(A)(iv) and its implementing regulations, as stated in Count One;

45

3.   That the Court enter an order, in accordance with Count Two, directing Defendant to modify its policies, practices, and procedures both to remedy the numerous ADA violations outlined above, in violation of 42 U.S.C. § 12182(b)(2)(A)(ii), and to permanently enjoin Defendant to make its business practices consistent with ADA Title III in the future;

4.   That the Court enter an order directing Defendant to provide Plaintiff full and equal access both to the experience and to the use of the public accommodation, and further order Defendant to maintain the required accessible features at the public accommodation so that Plaintiff and others similarly situated are offered the experience that is offered to non-disabled individuals, as stated in Count Three;

5.   That the Court enter an Order directing Defendant to evaluate and neutralize its policies, practices, and procedures towards persons with disabilities for such reasonable time so as to allow them to undertake and complete corrective procedures;

6.   That the Court award reasonable attorney's fees, costs, including expert fees, and other expenses of suit, to Plaintiff;

7.   That the Court enjoin Defendant to remediate the public accommodation to the proper level of accessibility required for the design and

construction of the facility for first occupancy, as stated in Count Four; and

8.    That the Court award such other, further, and different relief as the Court deems necessary, just, and proper.

Respectfully Submitted, this the 7th day of June 2019.

/s/ _L. Landis Sexton_

**L. LANDIS SEXTON**
**BPR # AL-5057N71L**
*Attorney for Plaintiff*
ADA Group LLC
4001 Carmichael Road, Suite 570
Montgomery, Alabama 36106
334.819.4030 p
334.819.4032 f
LLS@ADA-Firm.com

/s/ _Cassie E. Taylor_

**CASSIE E. TAYLOR**
**AL Bar # 8297-N67R**
*Attorney for Plaintiff*
ADA Group LLC
4001 Carmichael Road, Suite 570
Montgomery, Alabama 36106
334.356.5314 p
334.819.4032 f
CET@ADA-Firm.com

47

/s/

**TRACY G. BIRDSONG**
**BPR # AL-2170D64T**
*Attorney for Plaintiff*
ADA Group LLC
4001 Carmichael Road, Suite 570
Montgomery, Alabama 36106
334.819.4030 p
334.819.4032 f
TGB@ADA-Firm.com

## CERTIFICATE OF SERVICE

This is to certify that I have this day filed with the Clerk of Court the aforementioned Complaint for service of process by USPS mail or electronic mail, postage prepaid and properly addressed this 7th day of June 2019 to the following:

**Wintzell's-Capital City I, LLC.**
c/o Robert L Donlon, Registered Agent
960 Dauphin Street
Mobile, Alabama 36604

/s/ *Landis Sexton*

**L. LANDIS SEXTON**
**BPR # AL-5057N71L**
ADA Group LLC
4001 Carmichael Road
Suite 570
Montgomery, Alabama 36106
334.819.4030 p
334.819.4032 f
LLS@ADA-Firm.com
*Attorney for Plaintiff*

49